**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
_____
                              :
HECTOR RIVERA,                :
                              :        Civil Action
             Petitioner,      :        1:05-CV-05893 (FLW)
                              :
        v.                    :        O P I N I O N
                              :
THE FEDERAL BUREAU OF PRISONS, :
                              :
        et al.,              :
                              :
        Respondents.         :
_____:
```

**APPEARANCES:**

> HECTOR RIVERA, pro se
> #18347-054
> FCI Fort Dix
> P.O. Box 1000
> Fort Dix, NJ  08640

**FREDA L. WOLFSON, District Judge**

Petitioner HECTOR RIVERA (hereinafter "Petitioner") currently confined at the Federal Correctional Institution, Fort Dix, New Jersey, filed an application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and submitted due filing fee.  The application consists of Petitioner's petition (hereinafter "Petition") and

Page -1-

numerous exhibits, with the entire package totaling fifty two pages.  Having thoroughly reviewed Petitioner's application, the Court denies Petitioner's request for a Writ of Habeas Corpus.[1]

## <u>BACKGROUND</u>

Petitioner, who was found guilty of a felony and sentenced to a term of imprisonment of twenty one years and six months, was initially confined at the Metropolitan Correctional Center (hereinafter "MCC"), an institution serendipitously located not far away from the residence of Petitioner's mother.  <u>See</u> Pet. ¶¶ 4-5, 9, 12.  In December of 2002, Petitioner was re-designated, due to overcrowding of the MCC, to the FCI Fort Dix, which is the place of Petitioner's current confinement, has the same degree of security as the MCC, and is located within 500 miles of the place of residence of Petitioner's mother (and Petitioner's anticipated release area).  <u>See</u> <u>id.</u> ¶¶ 9-11.  Petitioner's mother "has been unable to come and visit [Petitioner at the Fort Dix] because . . . the distance" from her residence to the Fort Dix presented an obstacle to such visits due to his mother's age and deteriorating

---

[1] Petitioner also requests the Court to "award [Petitioner] monetary damages for [Petitioner's] pain and suffering."  Pet. at 13.  A claim for monetary damages, however, cannot be raised as part of habeas action under 28 U.S.C. § 2241.  If Petitioner wishes to obtain monetary damages, he must do so in an independent appropriate civil action.

health.[2]  See id. ¶ 12.  Petitioner's requests for re-designation

back to the MCC were denied by the Bureau of Prisons (hereinafter

"BOP") on the grounds that: (1) while "the Bureau . . . attempt[s]

to place inmates in an institution that is reasonably close to

their anticipated release area, [p]lacement within 500 miles is

considered reasonably close [and, therefore, the] FCI Fort Dix is

an appropriate facility" for Petitioner's confinement (Letter of

D.J. Steele (Sep. 13, 2004)); and (2) "[o]nce the inmate has been

---

[2] According to Petitioner: (1) his mother is 63 years old,
see Petitioner's Request for Administrative Remedy; and (2) she
is unable to visit Petitioner at the FCI Fort Dix because "she
needs to be accompanied whenever she leaves her home because of
her 'panic-like symptoms,'" and these symptoms prevent her from
"travel[ing] too far from home."  Pet. ¶ 17.  Petition is silent
as to whether and how frequently Petitioner's mother was visiting
Petitioner at the MCC.  See generally, Pet.  Petitioner's
application includes, however, a letter from the Ryan NENA
Community Health Center signed by Raymond Y. Teets, MD, and
reading as follows:

> Re: Hector Rivera # 183 47 054.  To Whom It May
> Concern: I am writing on behalf of [Petitioner's]
> mother, Mrs. Rivera.  Mrs. Rivera is a patient followed
> by me, and also followed by mental health [sic.].  Ms.
> [sic.] Rivera is receiving medication and treatment for
> Panic Disorder and Agoraphobia, as well as Borderline
> Personality Disorder.  The family reports that Ms.
> [sic.] Rivera has a lot of difficulty traveling any
> distance because of these psychiatric issues.  The
> shorter transit time . . . allows Mrs. Rivera to visit
> her son.

This Court is not entirely clear as to the statement that
"Ms." Rivera "has a lot of difficulty traveling *any* distance"
while still being able to execute "shorter" trips of unstated
length.  However, even if all findings in the letter are accepted
as true and correct, the outcome of Petitioner's § 2241
application is the same.

transferred within 500 miles of his or her release residence, no further referrals should be made as a 'nearer release' transfer consideration." Letter of John Nash, Warden, Fort Dix (Nov. 4, 2004) (citing Bureau of Prison's Program Statement 5100.07 (hereinafter "PS 5100.07")); accord Letter of John Nash, Warden, Fort Dix (Nov. 3, 2005), and Letter of T. Mulvey, Unit Manager (July 5, 2005) (stating that, "[w]hile the Unit Team is respectful of your Mother's health situation, you are still afforded the opportunity to keep in contact via telephone and correspondence privileges").

Petitioner asserts that such denial of transfer is: (1) in violation of Bureau of Prison's Program Statement 5267.07 (hereinafter "PS 5267.07") which states that the Bureau "encourages visiting by family, friends, and community groups to maintain the morale of inmate and to develop closer relationships between the inmate and family members or others in the community," see Pet. ¶ 12; and (2) based on undue interpretation of PS 5100.07 which, in addition to the language quoted by Warden Nash in his letter to Petitioner, provides that "[r]edesignation between same security level institutions *are discouraged*, except for [the 'nearer to release transfers'] or other unusual circumstances." (Emphasis supplied.) With respect to the latter claim, Petitioner asserts that, under the regime set forth by PS 5100.07, Petitioner's situation should be qualified as "unusual circumstances" warranting

his re-designation to the MCC, rather than the "nearer to release" one which is already satisfied by Petitioner being incarcerated within 500 miles of his anticipated release area.  See id. ¶ 17. Petitioner maintains that his circumstances are unusual because, if Petitioner's "mother's condition continues to get wors[e,] she could pass away before his release[,] and . . . he would . . . never see her again."  Id.

## STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

## DISCUSSION

Petitioner is seeking a writ of habeas corpus and review of an agency action.  As they relate to habeas relief, this Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241, the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity

but the execution of his sentence.  A habeas petition filed in the district where the petitioner is confined provides a remedy to challenge the effect of events subsequent to imposition of his sentence, see Gomori v. Arnold, 533 F.2d 871, 874-75 (3d Cir. 1976), and Petitioner may properly invoke § 2241 in the instant case to challenge denial of his transfer to the MCC.

Examining this challenge, the Court is required to "hold unlawful and set aside agency actions, findings, and conclusions found to be . . . not in accordance with law."  5 U.S.C. § 706(2)(A).  However, "the Court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971).  Therefore, this Court must: (1) determine whether the denial of Petitioner's request for re-designation was a permissible construction and/or application of the regime set forth in the Program Statements at issue; and (2) uphold the agency ruling if such construction was permissible.  Cf. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) (outlining the two-step analysis to determine the validity of an agency regulation and of application(s) of such regulation).

It is well established that no petitioner has a Due Process liberty interest in being assigned to the correctional institution of his choice.  See Wilkinson v. Austin, 125 S. Ct. 2384, 2393

(2005) (noting that the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne v. Haymes, 427 U.S. 236, 243 (1976); Walker v. Hughes, 558 F.2d 1247, 1252 (6th Cir. 1977)("Federal statutory law gives federal prison officials full discretion in the treatment of prisoners and does not restrict the authority of prison officials over the inmates as to placement in more restrictive living status, transfer to other prisons, subjection to significant and adverse effects on parole dates, and deprivation of privileges"). Moreover, the matters of placement of prisoners are among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." Meachum, 427 U.S. 225. In fact, the Supreme Court has held:

> The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. . . . Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the . . . prison system. Confinement in any . . . institution[] is within the normal limits or range of custody which the conviction has authorized . . . to impose.

Id. at 224-25 (1976).

While liberty interests may also be created by *mandatory* language contained in statutes and regulations, see, e.g., Sandin v. Conner, 515 U.S. 472, 483-84 (1995), Torres v. Fauver, 292 F.3d 141, 151 (3d Cir. 2002), the *inspirational* language of PS 5267.07 and the *narrowly carved exceptions* contained in PS 5100.07 cannot be read as broad mandatory regimes giving rise to Petitioner's right to be assigned to the correctional institution of Petitioner's choice.

Whilst PS 5267.07 "encourages visit[ation of inmates] by family, friends, and community groups to maintain the morale of inmate and to develop closer relationships between the inmate and family members or others in the community," this Program Statement does not guarantee such visits,[3] or the ease of executing such visits, nor does it suggest any obligations on the part of the BOP to house inmates in a fashion minimizing the transportation hardships of those who might desire to visit these inmates.[4]  If

_____

[3] In fact, there is no constitutional right to visitation. See Overton v. Bazzetta, 539 U.S. 126 (2003) ("The very object of imprisonment is confinement.  Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner.  An inmate does not retain rights inconsistent with proper incarceration. [F]reedom of association is among the rights least compatible with incarceration.  Some curtailment of that freedom must be expected in the prison context.")

[4] PS 5267.07 is set forth in the broadest terms and speaks about "family and friends" and even "members of the community" which the inmate is expected to enter upon his or her release. Nowhere does the Statement promise that *each and every* friend of the inmate, or *each and every* member of the inmate's family or

this Court is to take Petitioner's contention to its logical conclusion, then the BOP would be obligated to transfer every inmate to the prison nearest to the residence of each of such inmate's ailing relatives and then keep transferring the inmate if an ailing relative chooses to move. Clearly, such shuffling scheme is unrealistic and cannot be read by this Court into the inspirational language of PS 5267.07 which aims for nothing more and nothing less than to promote a basic social reintegration of inmates.

Petitioner's interpretation of PS 5100.07 is equally unavailing. The regulatory regime set forth in PS 5100.07 unambiguously discourages transfers and carves only a few narrow exceptions to this rule. The "unusual circumstances" exception

---

community would be able to execute the visits. Indeed, such goal might be unattainable because the residences of members of the family could be scattered all over the country and, moreover, keep changing as time goes by. In case of Petitioner, the purely social-integration goals of PS 5267.07 could be achieved just as well by Petitioner being visited by by non-family members of Petitioner's community or by members of Petitioner's family other than his mother. It appears from the language of the letter signed by Dr. Teets that Petitioner's family is not limited to his mother. See note 2, infra; compare Henry v. Dep't of Corr., 131 Fed. Appx. 847, 849 (3d Cir. 2005) (a constitutional violation might exist only in case of an inmate facing a "lifetime ban on all visitation," that is, a prohibition of all types of visits by all friends and relatives, since such complete restriction could qualify as "atypical and significant . . . in relation to the ordinary incidents of prison life.") Furthermore, it appears that Petitioner's mother is capable of visiting Petitioner if either she or Petitioner wishes for such visits enough to arrange for someone to accompany her.

neither spells out--nor is expected to explicate--an exhaustive list of such circumstances: it leaves the determination to BOP's discretion and should not be second-guessed by this Court unless patently unreasonable.  See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971).

In the case at hand, BOP's refusal to read Petitioner's situation as "unusual" was indeed reasonable in view of the fact that *any* inmate serving a lengthy sentence of imprisonment may eventually find his or her relatives falling victim to various life tragedies during the period of incarceration.[5] Indeed, the loved ones of *all* inmates will inevitably age, may get sick and even die while the inmates are serving their prison terms.[6]  Qualifying Petitioner's circumstances as "unusual" would effectively open floodgate to petitions certain to swamp the BOP.

---

[5] The penal theory encompasses various elements, including the retribution element which serves as a deterrence to commit a crime since this element envisions that a convict could be imprisoned and, thus, separated from his relatives or loved ones. See W. R. Lafave & A. W. Scott, Criminal Law § 1.5(a) (2d ed. 1986).

[6] This Court offers no opinion as to what particular situation(s) may qualify as "unusual circumstances" for the purposes of PS 5100.07.  The Court merely rules that the sole fact of having an ailing and/or aging relative does not suffice in the circumstances existing here.

While Petitioner's desire to spend time with his mother is commendable, the Court can neither usurp BOP's discretionary power with respect to housing of inmates nor find an obligation on the part of the BOP to execute Petitioner's transfers to the MCC if BOP's good faith considerations of Petitioner's request yielded a decision to keep Petitioner at Fort Dix.[7]  Accord Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 251 (3d Cir. 2005).

---

[7]

The sentencing Court, the Southern District of New York, issued an order stating that the Court "authorize[s] a transfer of [Petitioner] from . . . Fort Dix . . . to the [MCC] provided there is *sufficient bed space* at the MCC to house [Petitioner] and provided the *transfer is permissible under* [*BOP*] *regulations*." United States of America v. Rivera, 88 Cr. 859 (Nov. 9, 2004) (Keenan, J.) (emphasis supplied).  It appears that Petitioner questions BOP's good faith consideration of Judge Keenan's authorization on the basis of Petitioner's own observation that Fort Dix is even more overcrowded that the MCC.  See Pet. ¶ 25. However, the mere fact that BOP's opinion as to how to combat prison overpopulation differs from that of an inmate cannot be considered a valid indicator of BOP's lack of good faith. Conversely, BOP's decision appears to be well grounded in view of: (1) the undisputed fact that Petitioner's transfer to Fort Dix was caused by overcrowding at the MCC, see Pet. ¶ 11; and (2) the regulatory language of PS 5100.07 which *unambiguously discourages* any transfers except for those provided for in the exceptions that were already satisfied in--or inapplicable to--Petitioner's case.

## CONCLUSION

The Court concludes that BOP's denial of Petitioner's request cannot qualify as a violation of either the Constitution or laws, or treaties of the United States.  Therefore, this Court denies his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. An appropriate Order accompanies this Opinion.

S/Freda L. Wolfson
**FREDA L. WOLFSON**
**United States District Judge**

Date: February 28, 2006
        Camden, New Jersey